## Beard v. Klusmeier.

(Decided March 20, 1914.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Second Division).

1. License—Licensee—Trespasser—Duty of Owner or Occupant of Premises to.—The general rule is that the owner or occupant of premises owes no duty to licensees and trespassers further than to refrain from wilful acts of injury.

2. Contracts—Service—Care and Attention—Consideration.—A person who undertakes to do service for another is liable to such

other person for want of due care and attention in the perform-
ance of the service, even though there is no consideration for
such undertaking; the confidence accepted is an adequate con-
sideration to support the duty.

3.  Automobiles—One Invited to Ride in Private Automobile is a
Licensee.—A person invited to ride in the private automobile of
another is a licensee, and the duty of the person giving the in-
vitation is to refrain from doing any negligent acts by which the
danger of riding in the automobile is increased, or a new danger
created.

4.  Automobiles—Owner Inviting One to Ride with Him—Duty to Use
Ordinary Care.—Where the owner of an automobile invites an-
other person to ride with him, the duty of the owner to his guest
is to use ordinary care not to increase the danger of the guest,
or to create any new danger.

KELLEY & CHERRY and J. W. S. CLEMENTS for appellant.

J. J. KAVANAUGH for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

On the night of May 12, 1911, about 11 o'clock, the
appellant, Beard, started from Seventh and Walnut
streets, in Louisville, for a ride in his automobile, which
he was driving, with the appellees, Annie Brown Klus-
meier, Miss Wagner and two men, Jackson and Shields,
as his guests. Miss Wagner was sitting on the front
seat with Beard, while the other three guests were sit-
ting on the rear seat. They drove southwardly on
Seventh street until they reached Broadway; and then
turning westwardly they proceeded down Broadway to
about Twentieth street, when they turned and started
back eastwardly upon their return journey, driving along
the south side of Broadway.

According to the testimony of Mrs. Klusmeier, appel-
lant had been driving the machine at a high speed from
the start; and when they were several squares west of
Thirteenth street upon their return trip, another auto-
mobile attempted to pass appellant, whereupon he in-
creased his speed and participated in what the appellee
terms a race, with the other automobile. She says she
protested and begged to be allowed to get out of the
automobile, but appellant refused to heed her request.
At a point on Broadway between Thirteenth and Four-
teenth streets, appellant's machine collided with a pile of
brick, sand, and other building material, which had been
stacked in the street. The automobile was damaged to
an extent that practically unfitted it for further service,

and Mrs. Klusmeier was thrown to the floor against the front seat, catching her foot in the foot rail of the car, and severely wrenching it. She was carried to a physician's office, who found that one of the smaller bones of the foot had been broken, and she was later carried to her home.

Appellant, Jackson, and Shields deny the charge of racing, or that appellant was guilty of fast or reckless driving. Mrs. Klusmeier brought this action against Beard for damages, and having recovered a judgment for $1,733.00, Beard appeals.

The principal question for decision is this: What duty does the owner, who drives his automobile, owe to his guest who accepts an invitation to ride with him?

Appellant likens the case to that of one who is invited upon the premises of another, and insists that an invited guest must take the premises of the host as he finds them, and cannot complain of the conduct of his host in regard to keeping the premises in repair, or in the management of his personal property for the pleasure and enjoyment of the guest, unless guilty of gross negligence. Or, to state it differently, appellant contends that Mrs. Klusmeier was a licensee only; that the only duty owing to a mere licensee is the exercise of slight care, and that there is, consequently, no liability to a licensee except for gross negligence.

On the other hand, appellee arguing along the same line, insists that the host who invites a guest to come upon his property, or to use his property either expressly or impliedly, owes him the duty of exercising ordinary or reasonable care to keep the property or premises in a safe condition so that he will not be unreasonably exposed to danger or injury; and that appellant having invited appellee to ride in his automobile, he owed her the duty to operate it in a careful and prudent manner; to use ordinary care to avoid striking patent obstructions on the street, and not to inflict injury upon her.

The trial court took the appellee's view of the law, and instructed the jury that it was the duty of the appellant, Beard, to exercise ordinary care in the operation of his automobile to avoid injury to those who were in the automobile with him; and, that if he ran his automobile at an unreasonable speed, thereby causing it to collide with the obstructions in the street, he was guilty of negligence, and liable to appellee for any injury she may have sustained thereby.

It will be seen, therefore, that the decision of the case turns upon the question whether it was the duty of ap-

pellant, under the circumstances, to exercise ordinary care, or only slight care. If, under the circumstances, the law imposed upon appellant the duty of exercising only slight care, he was liable only in case he was guilty of gross negligence.

In principle, we see no difference between the case of one who goes upon premises at the invitation of the owner, and the case of one who takes a ride at the invitation of the owner of an automobile, or other vehicle. In either case the relation of host and guest arises.

The status of the social guest is, however, somewhat uncertain.

In 2 Sherman & Redfield on Negligence, section 706 (5th Ed.), it is said:

"The precise ground and degree of liability of a landlord to an invited guest having no business relations with him, are not yet thoroughly settled. In our judgment, the same rule should be applied in such a case that would be applied if the property were personal instead of real. The host should always be held responsible to the guest for gross negligence, that is, for such want of care as would justify a suspicion that he was indifferent to the safety of his guest."

In the leading English case of Southcote v. Stanley, 1 Hurlst. & N., 246, it is said, in substance, that the liability of the owner of a dwelling house to a visitor who is there on his express invitation, is no greater than to a licensee. The ground taken by Chief Baron Pollock and his associates seems to have been that a guest, gratuitously enjoying hospitality by express invitation at the house of his friend, must be presumed to have accepted the invitation with an understanding that he is to enjoy such things as his host possesses, and that to such a guest the host owes no legal duty to furnish him with anything better than he has for himself.

While a guest must take the premises as he finds them, with any risk owing to their disrepair, nevertheless the host is bound to warn his guest of any concealed danger upon the premises, known to the host.

In Cooley on Torts (Stud. Ed.), page 735, it is said:

"And the general rule supported by the authorities is, that the owner or occupant of premises owes no duty to licensees and trespassers, further than to refrain from wilful acts of injury."

While the rule above announced has frequently been applied in cases between host and guest in the use of the

host's vehicle, the authorities are not entirely satisfactory or uniform.

In Mayberry v. Sivey (1877), 18 Kas., 291, Mayberry invited Sivey to ride with him in his buggy. While riding they overtook Clark; and Mayberry, who was driving, having challenged Clark for a race, immediately whipped up his horse to pass Clark, whereupon Clark whipped up his team to prevent Mayberry from passing him. Sivey, seeing a race was imminent, and being in great fear of bodily injury, begged Mayberry to stop his buggy and let him out, but Mayberry not only refused to do so, but over the repeated requests of Sivey to stop, Mayberry continued to race recklessly, driving his horse at full speed until it struck a stone fence, which overturned the buggy and threw Sivey violently upon the ground, injuring him. Sivey sued Mayberry for damages, and recovered $400.00. In approving the verdict, the court said:

"The plaintiff in error claims that the action cannot be maintained upon the averments of the petition, and the evidence given by the defendant in error. We think otherwise. The petition sufficiently set forth a good cause of action against Mayberry, and the evidence of Sivey supports all the allegations of the petition, except it does not appear therefrom that Mayberry wilfully drove his horse and buggy so as to throw Sivey out. That Mayberry acted in a careless and negligent manner, is apparent; and the law requires from all persons, including those who render gratuitous services, reasonable care for the safety of life and person. Such care Mayberry did not exercise. His conduct was the more reprehensible, from the fact that he refused to permit Sivey to get out of the buggy, when he was anxious so to do for fear of impending danger; and in answer to the entreaties of Sivey to let him out, he exhibited his recklessness and rashness in saying, 'Never mind, old man, old Bill (meaning his horse) will bring us through all right; if he don't old Mayberry will pay the damages.' Mayberry is not excused from liability in the case, because Sivey was not to pay anything for his ride. 'A person who undertakes to do service for another is liable to such other person for want of due care and attention in the performance of the service, even though there is no consideration for such undertaking. The confidence accepted is an adequate consideration to support the duty.' (Whar. on Neg., 355.)"

It will be noticed that the facts in the Mayberry case were, according to the testimony of Mrs. Klusmeier, quite like the facts in the case at bar, since she says she begged appellant to desist from racing, and to let her get out. Whether her statement was true, was a question for the jury.

In Lightfoot v. Winnebago Traction Co., 123 Wis., 479, where the plaintiff, while riding in a carriage driven by her companion was injured by coming in collision with one of defendant's cars, the court held that the plaintiff could not recover if the collision was caused by the want of ordinary care and prudence on the part of the plaintiff or the driver of the wagon in which the plaintiff was riding, contributed to produce the injury. That case, however, merely raised the question of imputed negligence to the plaintiff, if her driver was negligent, in a suit against the traction company. It is hardly authoritative in this case.

Moreover, in this jurisdiction, it cannot be said that the negligence of the driver of a private conveyance is imputable to a passenger riding by invitation. Cahill v. Cincinnati, &c., R. R. Co., 92 Ky., 345; Bevis v. The Vanceburg Tel. Co., 121 Ky., 177; Louisville Railway Co. v. McCarthy, 129 Ky., 814; I. C. R. R. Co. v. Wilkins, 149 Ky., 35.

And, in view of the authorities just cited, we cannot agree with appellant's contention that where one invites another for a pleasure ride, the two are engaged in a common enterprise or joint venture, and that neither is liable to the other for any act of negligence.

Lochhead v. Jensen, 129 Pac., 347 (Utah), decided in 1912, was an action for damages for the death of Lochhead caused by the alleged negligence of Jensen in the management of an automobile, in which Lochhead was riding at Jensen's invitation, and as his guest. The act of negligence complained of was Jensen's running the automobile at a high and dangerous speed. The trial court charged the jury that if Jensen did not use due diligence in driving it, he was liable; and that in determining whether he was exercising reasonable care the jury might consider the manner in which the defendant was driving, and the speed at which he was driving. In condemning the charge for the reason that it went beyond the negligent act charged in the complaint, the court said:

"It is thus seen that the charge clearly presented to the jury questions of negligence far beyond that charged

in the complaint and permitted the jury to base a verdict not only upon the negligence alleged, but also upon any negligent or careless operation, management, control, or driving of the automobile, or failure to observe or keep a reasonable lookout for obstructions or dangers in the road. That the charge, in view of the alleged negligence, was erroneous and prejudicial, needs no argument."

It will be seen, that while the court seemingly approved the general doctrine announced by the trial court in his charge to the jury requiring Jensen to exercise ordinary care, the case was reversed because the charge went beyond the complaint, and allowed a recovery for negligence not charged.

Perhaps the best reasoned opinion upon the subject is found in Patnode v. Foote, decided in 1912 by the Appellate Division of the Supreme Court of New York, and reported in 153 App. Div., 494, 138 N. Y. Supp., 221. In that case Patnode invited Foote to ride with him in an open buggy drawn by one horse, driven by Patnode. There was evidence tending to show that Patnode drove at a reckless speed, against Foote's protest, and that a collision with a wagon, which threw Foote violently to the ground, was the result of Patnode's careless driving. Foote having recovered a verdict for $400.00, Patnode appealed.

In sustaining the recovery, the court said:

"The defendant insists, as one of his grounds for reversal of the judgment, that his motion for a nonsuit should have been granted, because the plaintiff was his gratuitous passenger to whom he owed no duty of care.

"Counsel upon both sides confess their inability to find any reported decision defining the obligation of one who invites another to ride in his private vehicle toward the passenger so invited.

"After considerable research we have not been able to find any such decision in this State, but we do find the case of Pigeon v. Lane (80 Conn., 237) which impresses us as stating the true rule. In that case the person invited to ride in the private vehicle of another is declared to be a licensee, and the duty of the person giving such invitation is stated to be the refraining from doing any 'negligent acts by which the danger of riding upon the conveyance was increased or a new danger created,' and a summary of the decision is stated in the syllabus as

follows: Such 'licensee can recover only for the active negligence of the licensor.'

"A person thus invited to ride stands in the same situation as a bare licensee who enters upon real property which the licensor is under no obligation to make safe or keep so, but who is liable only for active negligence. (Birch v. City of New York, 190 N. Y., 397.) The obligation of one who invites another to ride is not as great as that of the owner of real property who invites another thereon, especially for the purpose of trade or commerce, because, under such circumstances, the one who gives the invitation is bound to exercise ordinary care to keep such property reasonably safe. (Duhme v. Hamburg-American Packet Co., 184 N. Y., 404.)

"Under the above principles, therefore, one who invites another to ride is not bound to furnish a sound vehicle or a safe horse. If he should have knowledge that the vehicle was unfit for transportation or the horse unsafe to drive, another element would arise, and he might be liable for recklessly inducing another to enter upon danger. These latter elements, however, are not involved in the present action, and the duty of the defendant toward the plaintiff only was to use ordinary care not to increase the danger of her riding with him, or to create any new danger. It was practically upon this theory that the learned trial court submitted the case to the jury."

We think the rule there stated is the correct rule, and that appellant's duty to the appellee was to use ordinary care not to increase the danger of her riding with him, or to create any new danger.

In the case at bar, appellant is charged with creating a new danger by his fast and reckless driving. As said in the Foote case, *supra,* one who invites another to ride is not bound to furnish a safe vehicle, or a safe horse, or a safe automobile; but if the driver fails to use ordinary care in driving the automobile, he thereby creates a new danger for which he is liable.

In requiring the appellant to exercise ordinary care in the operation of his car and authorizing a recovery against him in case he ran his car at an unreasonable speed, thereby causing the injury, the trial court substantially followed the rule above indicated.

Finally, it is insisted there was a variance between the petition which alleged appellee was a passenger in appellant's car and that the injury was caused by the car turning over, and the proof which, it is claimed, showed

her to be a licensee only, and that the car did not turn over but only collided with the obstruction, tilted on one side, and stopped suddenly, thereby causing the appellee's injury.

We see no merit in this contention. A variance which does not affect the gist of the action as alleged is an immaterial variance. In order for a party to be prejudiced the variance must be material; (Civil Code, section 130) and, section 129 of the Civil Code of Practice, expressly provides that no variance between pleadings and proof is material, which does not mislead a party, to his prejudice; and that a party who claims to have been misled must show that fact to the satisfaction of the court, in order that it may order the pleading to be amended upon just terms.

But there was no substantial variance here. The allegation that plaintiff was a passenger in appellant's automobile includes the fact shown, that she was riding in appellant's automobile by his invitation, or with his acquiesence and approval; and the fact that she was not a passenger in the sense that she had not paid for the ride, could not have misled or prejudiced appellant in any way. The same is true as to the effect of the collision upon the automobile. The actionable facts were the collision, and its result to appellee; not the result to the automobile.

The ruling of the trial court upon the admission of testimony was not prejudicial to appellant.

Judgment affirmed; the whole court sitting.